IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBERT BERG, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No. 2:17-cv-848 |
| v. | ) ) JUDGE _____ |
| SCRIPPS NETWORKS INTERACTIVE, INC., GINA L. BIANCHINI, MICHAEL R. COSTA, PHILIP I. KENT, KENNETH W. LOWE, DONALD E. MEIHAUS, JARL MOHN, RICHELLE P. PARHAM, NICHOLAS B. PAUMGARTEN, MARY M. PEIRCE, JEFFREY SAGANSKY, WESLEY W. SCRIPPS, RONALD W. TYSOE, DISCOVERY COMMUNICATIONS, INC., and SKYLIGHT MERGER SUB INC., | ) ) JURY TRIAL DEMANDED ) ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 31, 2017 (the "Proposed Transaction"), pursuant to which Scripps Networks Interactive, Inc. ("Scripps" or the "Company") will be acquired by Discovery Communications, Inc. ("Parent") and Skylight Merger Sub Inc. ("Merger Sub," and together with Parent, "Discovery").

2. On July 30, 2017, Scripps' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

Agreement") with Discovery. Pursuant to the terms of the Merger Agreement, shareholders of Scripps will receive $90.00 per share, comprised of $63.00 per share in cash and $27.00 per share in Class C common shares of Discovery stock, for each share of Scripps common stock.

3. On September 14, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Scripps common stock.

9. Defendant Scripps is an Ohio corporation and maintains its principal executive offices at 9721 Sherrill Boulevard, Knoxville, Tennessee 37932. Scripps' common stock is traded on the NasdaqGS under the ticker symbol "SNI."

10. Defendant Gina L. Bianchini ("Bianchini") has served as a director of Scripps since 2012.

11. Defendant Michael R. Costa ("Costa") has served as a director of Scripps since 2009.

12. Defendant Philip I. Kent ("Kent") has served as a director of Scripps since 2017.

13. Defendant Kenneth W. Lowe ("Lowe") has served as a director, President, and Chief Executive Officer ("CEO") of Scripps since July 2008.

14. Defendant Donald E. Meihaus ("Meihaus") has served as a director of Scripps since 2015.

15. Defendant Jarl Mohn ("Mohn") has served as a director of Scripps since 2008.

16. Defendant Richelle P. Parham ("Parham") has served as a director of Scripps since 2012.

17. Defendant Nicholas B. Paumgarten ("Paumgarten") has served as a director of Scripps since 2008.

18. Defendant Mary M. Peirce ("Peirce") has served as a director of Scripps since 2008.

19. Defendant Jeffrey Sagansky ("Sagansky") has served as a director of Scripps since 2008.

20. Defendant Wesley W. Scripps ("W. Scripps") has served as a director of Scripps since 2014.

21. Defendant Ronald W. Tysoe ("Tysoe") has served as a director of Scripps since 2008.

22. The defendants identified in paragraphs 10 through 21 are collectively referred to herein as the "Individual Defendants."

23. Defendant Parent is Delaware corporation and a party to the Merger Agreement.

24. Defendant Merger Sub is a wholly-owned subsidiary of Parent and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Scripps (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

26. This action is properly maintainable as a class action.

27. The Class is so numerous that joinder of all members is impracticable. As of July 27, 2017, there were approximately 95,956,398 shares of Scripps common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

28. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

29. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and

4


adequately protect the interests of the Class.

30. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

31. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

32. Scripps is one of the leading developers of engaging lifestyle content in the home, food, and travel categories for television, the Internet, and emerging platforms.

33. The Company's lifestyle media portfolio includes leading TV and entertainment brands HGTV, Food Network, Travel Channel, DIY Network, Cooking Channel, and Great American Country.

34. Scripps' digital division, Scripps Lifestyle Studios, creates compelling content for online, social, and mobile platforms.

35. The Company's international operations include TVN, Poland's premier multi-platform media company; UKTV, an independent commercial joint venture with BBC Worldwide; Asian Food Channel, the first pan-regional TV food network in Asia; and lifestyle channel Fine Living Network.

36. The Company's global networks and websites reach millions of consumers across North and South America, Asia-Pacific, Europe, the Middle East, and Africa.

37. On July 30, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired by Discovery.

38. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

39. Further, the Company must promptly advise Discovery of any proposals or inquiries received from other parties.

40. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Discovery a "matching right" with respect to any "Superior Proposal" made to the Company.

41. Further locking up control of the Company in favor of Discovery, the Merger Agreement provides for a "termination fee" of $356 million payable by the Company to Discovery if the Individual Defendants cause the Company to terminate the Merger Agreement.

42. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

43. Moreover, certain members of the Scripps family, including Individual Defendants W. Scripps and Peirce, have entered into a voting agreement with Discovery,

6

pursuant to which they have agreed to vote their Company shares in favor of the Proposed Transaction. Accordingly, such shares are already locked up in favor of the merger.[1]

44. The merger consideration to be provided to plaintiff and the Class in the Proposed Transaction appears inadequate.

45. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

46. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

47. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

48. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

49. First, the Registration Statement omits material information regarding Scripps' financial projections, Discovery's financial projections, and the analyses performed by the Company's financial advisors, Allen & Company LLC ("Allen")[2] and J.P. Morgan Securities LLC ("J.P. Morgan," and together with Allen, the "Financial Advisors").

50. With respect to the "Scripps internal forecast," the Registration Statement fails to disclose: the definition of unlevered free cash flow and the constituent line items used to calculate unlevered free cash flow; and a reconciliation of all non-GAAP to GAAP metrics.

---

[1] In addition to the omissions set forth below, the Registration Statement fails to disclose the percentage of Scripps' shares locked up by the Scripps family voting agreement.

[2] One of Discovery's current directors, Paul Gould, is a managing director at Allen.

7

51. With respect to the "Scripps Discovery forecast," the Registration Statement fails to disclose: the definition of unlevered free cash flow and the constituent line items used to calculate unlevered free cash flow; stock-based compensation; amortization of deferred launch incentives; and a reconciliation of all non-GAAP to GAAP metrics.

52. With respect to the "Discovery projections," the Registration Statement fails to disclose: operating income; mark-to-market share-based compensation; depreciation and amortization; restructuring and other charges; impairment charges; gains and losses on business and asset dispositions; the inter-segment eliminations related to production studios; amortization of deferred launch incentives; cash provided by operating activities; acquisitions of property and equipment; and a reconciliation of all non-GAAP to GAAP metrics.

53. The Registration Statement also fails to disclose the assumptions underlying Discovery's adjustments to Scripps' projections.

54. With respect to Allen's *Discounted Cash Flow Analysis* of Scripps, the Registration Statement fails to disclose: the standalone unlevered, after-tax free cash flows used by Allen in the analysis and the corresponding definition and line items; the range of terminal values for Scripps; Allen's basis for selecting a range of perpetuity growth rates of 0.50% to 1.50%; and the inputs and assumptions underlying the discount rates of 7.5% to 8.5%.

55. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Scripps, the Registration Statement fails to disclose: the standalone unlevered, after-tax free cash flows used by J.P. Morgan in the analysis and the corresponding definition and line items; the range of terminal values for Scripps; J.P. Morgan's basis for selecting a range of perpetuity growth rates of 0.50% to 1.50%; and the inputs and assumptions underlying the discount rates of 7.5% to 8.5%.

56. With respect to Allen's *Discounted Cash Flow Analysis* of Discovery, the Registration Statement fails to disclose: the standalone unlevered, after-tax free cash flows used by Allen in the analysis and the corresponding definition and line items; the range of terminal values for Discovery; Allen's basis for selecting a range of perpetuity growth rates of 0.50% to 1.50%; and the inputs and assumptions underlying the discount rates of 7.5% to 8.5%.

57. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Discovery, the Registration Statement fails to disclose: the standalone unlevered, after-tax free cash flows used by J.P. Morgan in the analysis and the corresponding definition and line items; the range of terminal values for Discovery; J.P. Morgan's basis for selecting a range of perpetuity growth rates of 0.50% to 1.50%; and the inputs and assumptions underlying the discount rates of 7.5% to 8.5%.

58. With respect to J.P. Morgan's *Illustrative Value Creation Overviews* analysis, the Registration Statement fails to disclose the estimated present value of the potential run-rate cost savings estimated by the managements of Scripps and Discovery to be realized from the Proposed Transaction.

59. With respect to Allen's analysis of the illustrative pro forma financial impact of the merger, the Registration Statement fails to disclose: Discovery's estimated earnings per share and estimated adjusted free cash flow per share; and the potential run-rate cost estimated by the managements of Scripps and Discovery to result from the Proposed Transaction.

60. With respect to the Financial Advisors' *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by the Financial Advisors in the analysis.

61. With respect to the Financial Advisors' *Selected Public Companies Analyses*, the

9

Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by the Financial Advisors in the analyses.

62. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

63. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction"; (ii) "Scripps' Reasons for the Transaction and Recommendation of the Scripps Board"; (iii) "Opinion of Allen & Company LLC, Financial Advisor to Scripps"; (iv) "Opinion of J.P. Morgan Securities LLC, Financial Advisor to Scripps"; and (v) "Unaudited Prospective Financial Information."

64. Second, the Registration Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

65. Specifically, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of Scripps' officers and directors, including who participated in all such communications.

66. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that

10

information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

67. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction"; (ii) "Scripps' Reasons for the Transaction and Recommendation of the Scripps Board"; and (iii) "Interests of Scripps' Directors and Executive Officers in the Merger."

68. Third, the Registration Statement omits material information with respect to potential conflicts of interest of the Financial Advisors.

69. Specifically, the Registration Statement fails to disclose the nature of the services Allen "in the past has provided, currently is providing and in the future may provide" to Discovery and its affiliates, as well as the estimated amount of fees payable to Allen for such services.

70. Additionally, the Registration Statement provides that, "[d]uring the two years preceding the date of J.P. Morgan's opinion, neither J.P. Morgan nor its affiliates had any other material financial advisory or other material commercial or investment banking relationships with Scripps." However, the Registration Statement later provides that, "[d]uring the two-year period preceding J.P. Morgan's opinion dated July 29, 2017, aggregate fees received by J.P. Morgan were approximately $1 million from Scripps[.]" Defendants must correct these inconsistent statements.

71. Moreover, while the Registration Statement provides that "J.P. Morgan's commercial banking affiliate is an agent bank and a lender under outstanding credit facilities of Scripps, for which it receives customary compensation or other financial benefits[,]" the

11

Registration Statement fails to disclose the amount of such compensation and "other financial benefits."

72. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

73. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction"; (ii) "Scripps' Reasons for the Transaction and Recommendation of the Scripps Board"; (iii) "Opinion of Allen & Company LLC, Financial Advisor to Scripps"; and (iv) "Opinion of J.P. Morgan Securities LLC, Financial Advisor to Scripps."

74. Fourth, the Registration Statement fails to disclose whether any nondisclosure agreements executed by Scripps and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

75. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

76. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction"; and (ii) "Scripps' Reasons for the Transaction and Recommendation of the Scripps Board."

77. The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to Scripps' stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Scripps

78. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

79. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Scripps is liable as the issuer of these statements.

80. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

81. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

82. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

83. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

84. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and

Rule 14a-9 promulgated thereunder.

85. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Discovery

86. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

87. The Individual Defendants and Discovery acted as controlling persons of Scripps within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Scripps and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

88. Each of the Individual Defendants and Discovery was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

89. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

90. Discovery also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

91. By virtue of the foregoing, the Individual Defendants and Discovery violated Section 20(a) of the 1934 Act.

92. As set forth above, the Individual Defendants and Discovery had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for

15

plaintiff's attorneys' and experts' fees; and

    F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 27, 2017

**LAW OFFICES OF JOHN C. CAMILLUS, LLC**

By: */s/ John C. Camillus*
John C. Camillus
P.O. Box 141410
Columbus, OH 43214
Telephone: (614) 558-7254
Fax: (614_ 559-6731
Email: jcamillus@camilluslaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long (pro hac vice forthcoming)
Gina M. Serra (pro hac vice forthcoming)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800